**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| Property Disclosure Technologies, LLC, | ) | |
| | ) | Case No. 6:14-cv-34-JDL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Redfin Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

---

**REDFIN'S MOTION FOR JUDGMENT ON THE PLEADINGS
OF INVALIDITY OF THE PATENTS-IN-SUIT**

J. Thad Heartfield
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
(409) 866-3318

Brent A. Hawkins
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606
(312) 372-2000

Michael S. Nadel
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

*Attorneys for Redfin Corporation*

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. THE ASSERTED PATENTS ..... 2

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. THIS CASE IS UNIQUELY POSTURED FOR JUDGMENT ON THE PLEADINGS ..... 8

B. THE CLAIMS OF THE ASSERTED PATENTS ARE INVALID ..... 10

1. Claims 1-8 and 16-20 of the ’167 patent and claims 1 and 2 of the ’530 patent lack patent eligible subject matter ..... 10

2. Claims 9-15 of the ’167 patent and claims 3-20 of the ’530 patent lack patent eligible subject matter ..... 11

3. Application of Supreme Court Precedent to the Claims Compels Judgment of Invalidity ..... 12

a. The claimed steps are not physically linked to any device ..... 12

b. The claims are “trivial steps” that preempt the field ..... 14

c. The claims fail the machine-or-transformation test ..... 15

V. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Services, GMBH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013)....................14

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)....................6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
687 F.3d 1266....................2, 8

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010).................... passim

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
No. 6:12-cv-674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014)....................7, 8, 9

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
717 F.3d 1269 (Fed. Cir. 2013) (plurality opinion) *cert. granted*, 2013 WL 4776518 (U.S. Dec. 6, 2013)....................8, 9, 15

*Cyberfone Sys., LLC v. CNN Interactive Grp. Inc.*,
Nos. 2012–1673, 2012–1674, 2014 WL 718153 (Fed. Cir. Feb. 26, 2014)....................8

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)....................7, 10, 13, 16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
954 F. Supp. 2d 509 (2013)....................9, 12

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012)....................7, 13

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980)....................11

*Diamond v. Diehr*,
450 U.S. 175 (1981)....................1, 12

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008)....................6

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012)....................13

*Gottschalk v. Benson*,
409 U.S. 63 (1972)....................7

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002)....................7

*Guidry v. Am. Public Life Ins. Co.*,
512 F.3d 177 (5th Cir. 2007)....................6

*H&R Block Tax Services, Inc. v. Jackson Hewitt Tax Service, Inc.*,
No. 6:08-cv-37 (E.D. Tex. Feb. 2, 2011) (ECF No. 108)....................9, 16

*In re Ferguson*,
558 F.3d 1359 (Fed. Cir. 2009)....................16

*In re Schrader*,
22 F.3d 290 (Fed. Cir. 1994)....................13

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
132 S. Ct. 1289 (2012).................... passim

*MySpace, Inc. v. GraphOn Corp.*,
672 F.3d 1250 (Fed. Cir. 2012)....................8, 16

*Research Corp. Tech. v. Microsoft Corp.*,
627 F.3d 859....................12, 13

*SiRF Tech., Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010)....................15

*Soverain Software LLC v. Newegg Inc.*,
705 F.3d 1333 (Fed. Cir. 2013)....................16

*State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*,
149 F.3d 1368 (Fed. Cir. 1998)....................1

*TQP Dev., LLC v. Intuit Inc.*,
No. 2:12-cv-180, 2014 WL 651935 (E.D. Tex. Feb. 18, 2014)....................16

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1335 (Fed. Cir. 2013)....................8, 12, 13, 14

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*,
No. 6:12-cv-375, 2013 WL 7393173 (E.D. Tex. Mar. 27, 2013)....................9

*Voest-Alpine Trading USA Corp. v. Bank of China*,
142 F.3d 887 (5th Cir. 1998)....................7

STATUTES

35 U.S.C. § 101 .......... passim

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(c) .......... 6, 7, 17

Rule 12(b)(6) .......... 6

U.S. Patent No. 7,584,167 .......... passim

U.S. Patent No. 7,945,530 .......... passim

**REDFIN'S MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY OF THE PATENTS-IN-SUIT**

Defendant Redfin Corporation moves for judgment on the pleadings that claims 1-20 in U.S. Patent No. 7,584,167 (the "'167 patent") and claims 1-20 in U.S. Patent No. 7,945,530 (the "'530 patent") are invalid as ineligible subject matter under 35 U.S.C. § 101.

## I. INTRODUCTION

Judgment should be granted on the pleadings because the claims of the '167 patent and the '530 patent are drawn to steps that are well-known, routine, and inconsequential. *See Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1291-92 (2012). The claims, "considered as a whole," do not perform a combination of steps that "transform an unpatentable principle into patentable process." *Diamond v. Diehr*, 450 U.S. 175, 183, 192 (1981). Plaintiff Property Disclosures Technologies LLC ("PDT") brought suit on claims that recite nothing more than steps of assembling a real estate disclosure report—quintessentially abstract intellectual concepts that fail the subject matter eligibility inquiry. Such claims are not entitled to patent protection.

Even a cursory review of the asserted patents compels the conclusion that the United States Patent and Trademark Office should not have issued the patents-in-suit. At the time the inventor applied for the asserted patents, the controlling test for determining patent eligibility under Section 101 was the broad "useful, concrete and tangible result" test of *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998). Since then, the "useful, concrete and tangible result" test of *State Street* was overruled, and the Supreme Court has prohibited issuing patents that subsume a fundamental concept. *Bilski v. Kappos*, 130 S. Ct. 3218, 3229-30 (2010); *see also Mayo*, 132 S. Ct. at 1293-94. Because the claims at issue in this litigation are not bound up with any hardware to perform the recited steps, impermissibly

preempt the field of online real estate listings, and do not pass the machine-or-transformation test, the claims are not patent eligible.[1] The Court should hold the claims of the asserted patents invalid.

## II. THE ASSERTED PATENTS

The two asserted patents share the title "Real Estate Disclosure Reporting Method." The similar specifications are directed towards overlapping subject matter, with only minor differences between the two sets of claims.[2] The '530 patent is a continuation of the '167 patent and both asserted patents claim a priority date of June 23, 2000.

The specification generally discusses a real estate reporting method that compiles home conditions and lists those conditions to facilitate real estate transactions. The Abstract of the '167 patent states in full:

> A real estate disclosure reporting method compiles a plurality of items of disclosure. The items of disclosure are related according to a plurality of condition categories. A particular property is researched to determine a plurality of known ones of the items of disclosure, and the known ones are disclosed according to condition categories."

*Ex. A.* Similarly, the Abstract of the '530 patent states:

> A real estate disclosure reporting method identifies a condition category, creates a disclosure form and lists items of information on the disclosure form. The items of disclosure relate to the condition category. The reporting method also researches a particular property to determine known items of disclosure, indicates the known items of disclosure, indicates the known items

[1] *See, e.g., Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1318, 1322–23 (Fed. Cir. 2012) (claims to enabling tax-free property exchanges held unpatentable on § 101 grounds); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (claims to administering and tracking life insurance policy values held unpatentable under § 101); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330 (Fed. Cir. 2012) (claims to applying for credit held unpatentable under § 101); *CyberSource Corp.v. Retail Decisions, Inc.*, 654 F.3d 1366, 1367-68, 1376-77 (Fed. Cir. 2011) (claims to verifying credit card transactions held unpatentable under § 101).

[2] Each patent has twenty claims. PDT has yet to identify which claims it is asserting.

> of disclosure on the disclosure form and generates a report of the known items of disclosure.

*Ex. B*. Thus, the absence of identifiable physical linkages to perform the supposed invention begins in the Abstract. This failure carries through to the remainder of the specification, which is full of words, preferred embodiments, and appendices, but adds nothing to further define the abstract concept set forth in the claims.

The patents-in-suit share 32 pages of figures. On close review, the figures are incoherent and offer no context or public notice function as to what exactly is being disclosed. *See, e.g.,* Figs. 4A-9. They also lack the structural detail that should accompany an issued patent. None of the figures diagram a network. None set forth a box depicting a computer. None display the decision logic corresponding to programming instructions. There is no code. There are no algorithms. Instead, the figures include a depiction of real estate disclosure forms (Figs. 3A-B), block diagrams of various aspects of the real estate disclosure process (Figs. 1A-2), and a series of flowcharts that purport to illustrate real estate "processes."

The "Background" and "Summary of the Invention" sections of the asserted patent specifications focus on a compilation of real estate conditions. The written description provides *no* indication that a computer or processing device would be integral to the contemplated disclosure process. Generally speaking, the written description contemplates that once the "items of disclosure" are compiled into categories, there is reporting for information for a specific property. In the '530 patent, the reporting information is stored in databases, where data can be downloaded to a web page. '167 patent at Col. 1:50-64; '530 patent at Col. 1:51-61; '530 patent at Col. 2:20-35.

The patents' lack of practical utility is highlighted in the thirteen columns of random definitions that are styled as "Appendix A" and "Appendix B." *See* '167 patent at Cols. 10:21-

23:6; ’530 patent at Cols. 10:46-23:37. The amalgamation of ancillary, well-understood terms are, at best, a futile effort to promote form over substance. For pages upon pages, the specification catalogs items that are not only familiar in the real estate vocabulary (*i.e.,* “feasibility,” “gentrification economics,” “non-market motivation,” “urban decay”) but are a long-standing part of the popular vernacular (“airport,” “college,” “crime scene,” “daycare,” “odors,” “places of worship,” “schools,” “septic tanks,” “tornado,” “traffic noise.”). *E.g.,* ’167 patent at Col. 10:28-30; 11:3, 11:12; 11:17-18; 12:55; 12:62-63; 13:24-25; 13:54-59; 13:62-63; 17:19-21; 17:44-45; 19:42-46; 22:35-36. The unhelpful definitions do not end there. The appendices go so far as to include definitions for unrelated zoology/ecology terms such as “kangaroo rat,” “aquatic flora,” “quicksand,” “riparian habitats,” and “saltweed.” The over-inclusion is puzzling. The written description appears to be an effort to distract from the inherently abstract claims.

Like the written description, the claims of each patent lack hardware, programming instructions, code, algorithms—anything that might render the recited steps more tangible to a person of ordinary skill. For ease of reference, the independent claims are reproduced below:

| **’167 Patent Independent Claims** | |
|---|---|
| Claim 1 | **1.** A real estate disclosure reporting method comprising the steps of:<br>*compiling* a plurality of items of disclosure;<br>*relating* said items of disclosure according to a plurality of condition categories;<br>*researching* a particular property to determine a plurality of known ones of said items of disclosure; and<br>*disclosing* said known ones according to said condition categories. |

| | |
|---|---|
| Claim 9 | **9.** A real estate disclosure reporting method comprising the steps of:<br>*providing* a web page media;<br>*listing* a plurality of known items of disclosure for specific property on said web page media;<br>*categorizing* said known items of disclosure on said web page media according to a plurality of real estate conditions; and<br>*downloading* said web page media to a browser over the Internet. |
| Claim 16 | **16.** A real estate disclosure reporting method comprising the steps of:<br>*identifying* a subject property;<br>*researching* said property to determine a plurality of known items of disclosure; and<br>*reporting* said known items of disclosure according to a plurality of condition categories. |

| **’530 Patent Independent Claims** | |
|---|---|
| Claim 1 | **1.** A real estate disclosure reporting method comprising the steps of:<br>*identifying* a condition category;<br>*creating* a disclosure form listing a plurality of items of disclosure that relate to the condition category;<br>*researching* a particular property to determine a plurality of known ones of the items of disclosure; and<br>*indicating* the known items of disclosure on the disclosure form. |
| Claim 9 | **9.** A real estate disclosure reporting method comprising the steps of:<br>*researching* a particular property to determine a plurality of known items of disclosure;<br>*compiling* the known items of disclosure on electronic media;<br>*identifying* at least a portion of the known items of disclosure with a condition category; and<br>*downloading* the electronic media to a user over the Internet. |
| Claim 15 | **15.** A real estate disclosure reporting method comprising the steps of:<br>*identifying* a subject property;<br>*accessing* a plurality of databases over the Internet; the databases having subject property related data;<br>*determining* known items of disclosure regarding the subject |

| | |
|---|---|
| | property from the databases; *reporting* the known items of disclosure on electronic media; and *downloading* the electronic media to a user over the Internet. |

The dependent claims do not cure the deficiencies of the independent claims. The dependent claims generally target specific types of sources being researched or the information being disclosed. In the ’167 patent, examples of targeting sources include government and police records (claim 5) and a database over the internet (claim 10). Examples of information being disclosed include background information (claim 14) or a map of an aerial photograph (claim 15). The dependent claims of the ’530 patent largely follow the approach set forth in the parent patent. For example, government and police records appear in claim 16 and a database over the Internet in claim 10. Claims 13 and 14 point to the format of the claimed output, such as utilizing a markup language for downloading known items of disclosure to a user. *See* ’530 patent at Col. 24:29-35. These claims, like their counterparts, fall short of providing a new or useful application for routine functions. As discussed herein, no claim of either patent can withstand scrutiny under Section 101. Every claim of both asserted patents is invalid.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), “[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.” FED. R. CIV. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court “accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.” *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). However, “the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). In considering a Rule 12(c) motion for judgment on the pleadings, the court may look at documents attached to the complaint because these documents thereby [become] part of [the] pleadings." *Id*. at 313 (quoting *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998)).

## IV. ARGUMENT

Whether a claim recites patent-eligible subject matter is a question of law. *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1367-68, 1369 (Fed. Cir. 2011). Section 101 of the Patent Act defines the four categories of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. The Supreme Court has recognized three specific exceptions to the otherwise broad domain of patent eligible subject matter: "laws of nature, physical phenomena, and abstract ideas." *Bilski*, 130 S. Ct. at 3225. Abstract ideas are ineligible for patent protection because "they are the basic tools of scientific and technological work." *Id.* at 3231 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). A monopoly over such ideas would improperly preempt use of such ideas in all fields. *See id.* at 3231.

Assessing whether a claim covers an abstract idea or its application involves two steps. First, the Court identifies what, if any, abstract idea is involved in the claim; and second, the

Court determines "whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine, and specific application of that idea." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-674, 2014 WL 923280, at *4 (E.D. Tex. Jan. 21, 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1346 (Fed. Cir. 2013)); *see also CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1282 (Fed. Cir. 2013) (plurality opinion) *cert. granted*, 2013 WL 4776518 (U.S. Dec. 6, 2013) (discussing *Mayo*, 132 S. Ct. at 1294-97). Patent eligible claims "tie the abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something." *Ultramercial*, 722 F.3d at 1344 (emphasis in original). By contrast, claims that recite nothing more than the idea of doing the claimed step on a computer are patent ineligible. Cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within Section 101. *See, e.g.*, *CyberSource*, 654 F.3d at 1375 (emphasizing "that the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium").

The Court should find that the claims in this case that lack "substantive limitations that narrow, confine, or otherwise tie down the claim." *Mayo*, 132 S. Ct. at 1293. At their essence, the claims cover nothing more than ideas, and they do so without tethering those abstract ideas to software or hardware.

### A. THIS CASE IS UNIQUELY POSTURED FOR JUDGMENT ON THE PLEADINGS.

No discovery is necessary to resolve the question of law posed by this motion. Nor is claim construction required to decide the patent eligibility question. *See Clear with Computers*, 2014 WL 923280, at *6 (citing *Bancorp*, 687 F.3d at 1274) (accepting non-movant's construction of the for purposes of conducting the § 101 analysis); *see also Cyberfone Sys., LLC*

*v. CNN Interactive Grp. Inc.*, Nos. 2012–1673, 2012–1674, 2014 WL 718153, at *2 n.1 (Fed. Cir. Feb. 26, 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."). Like the situation presented in *Clear with Computers*, the claims are ineligible under any construction informed by the intrinsic record. For purposes of this motion, the Court may claim constructions most favorable to the patentee, because there is *no* viable construction that could read in the presence of a specific device performing the steps of the claims.

The Court should act now to invalidate the claims of the asserted patents before there is additional expenditure of party or judicial resources. *E.g., Clear with Computers*, 2014 WL 923280; *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, No. 6:12-cv-375, 2013 WL 7393173 (E.D. Tex. Mar. 27, 2013); *H&R Block Tax Services, Inc. v. Jackson Hewitt Tax Service, Inc.*, No. 6:08-cv-37 (E.D. Tex. Feb. 2, 2011) (ECF. No. 137) (originally issued on Nov. 10, 2009 as ECF No. 108). The asserted patents in this case do not present a close question that will turn on either claim construction or discovery. Nowhere in the claims (or elsewhere in the patents) do the words "computer," "network," "software," "program," and "instruction" appear. To the contrary, the claims and the contextual disclosures in the written description lack any "physical linkages" that would be expected to perform the claimed method steps. *DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509, 527 (2013) (Gilstrap, J.) (finding system claims patent eligible where they disclosed "a specific set of physical linkages"). The Court needs no additional information to conclude the steps claimed in the asserted patents—on their own—are abstract ideas.

### B. THE CLAIMS OF THE ASSERTED PATENTS ARE INVALID.

For purposes of conducting the section § 101 analysis, the claims of the patent-in-suit can be grouped into two categories. The first category compromises claims 1-8 and 16-20 of the ’167 patent and claims 1 and 2 of the ’530 patent. Under controlling case law, there is simply no argument whatsoever the claims in this category pass muster. The second category compromises the remaining claims, claims 9-15 of the ’167 patent and claims 3-20 of the ’530 patent, which include the terms “downloading” and/or “the Internet.” PDT’s argument for the validity of those claims can be anticipated, but it is simply erroneous. The two categories are addressed below in turn.

#### 1. Claims 1-8 and 16-20 of the ’167 patent and claims 1 and 2 of the ’530 patent lack patent eligible subject matter.

Claims 1-8 and 16-20 in the ’167 patent and claims 1 and 2 in the ’530 patent are entirely abstract. They do not purport to rely on or relate to any modern technology. They do not include a “downloading” step or reference “the Internet.” Claim 1 of the ’167 patent is exemplary:

> 1. A real estate disclosure reporting method comprising the steps of:
>
> *compiling* a plurality of items of disclosure;
>
> *relating* said items of disclosure according to a plurality of condition categories;
>
> *researching* a particular property to determine a plurality of known ones of said items of disclosure; and
>
> *disclosing* said known ones according to said condition categories.

Like the other claims of the asserted patents in this category, claim 1 merely recites the method steps—compiling, relating, researching, and disclosing—that can be *and are* mental processes performed by human beings. *CyberSource*, 654 F.3d at 1371. (“[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable

abstract ideas"). For centuries, people have been using paper and pencil to *compile* features for a listed property, *relate* property features into categories, *research* the disclosed features of a listed property, and *disclose* features for a listed property according to categories. *See* '167 Patent at Col. 23:8-16 (claim 1). These are precisely the type of claims that *CyberSource* deemed to constitute inherently ineligible subject matter. Claims 1-8 and 16-20 are invalid under Section 101.

**2. Claims 9-15 of the '167 patent and claims 3-20 of the '530 patent lack patent eligible subject matter.**

Claims 9-15 of the '167 patent and claims 3-20 of '530 patent each include reference to "downloading" or "the Internet." Claim 9 of the '530 patent is exemplary:

> 9. A real estate disclosure reporting method comprising the steps of:
>
> *researching* a particular property to determine a plurality of known items of disclosure;
>
> *compiling* the known items of disclosure on electronic media;
>
> *identifying* at least a portion of the known items of disclosure with a condition category; and
>
> *downloading* the electronic media to a user over the Internet.

The final step is the act of "downloading" "over the Internet." However, the asserted patents neither claim nor disclose a physical device that performs the step of "downloading" "over the Internet" in any specific way that makes the step essential and/or transformative. No physical device is referenced in the claims. No physical device is disclosed in the specification. No physical device is depicted in the figures.

Mere recitation of a "downloading" step does not save the claims. While Congress may have intended a permissive approach to patent eligibility, an issued patent must demonstrate some modicum of ingenuity. *See Bilski*, 130 S. Ct. at 3225 (citing *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)). The claims of the asserted patents are limited to boilerplate mention of

the ubiquitous act of "downloading." Without more, "downloading" does not convey a *specific way* of doing something with a computer. *See Ultramercial*, 722 F.3d at 1344. In the absence of any attempt to physically link the claimed steps to a computer or computer components, those steps simply constitute disembodied concepts rather than an invention warranting a *quid pro quo* monopoly.

**3. Application of Supreme Court Precedent to the Claims Compels Judgment of Invalidity.**

**a. The claimed steps are not physically linked to any device.**

Courts applying *Mayo* recognize the importance of a claimed device to elevate "insignificant post-solution activity" into a bona fide *application* of a scientific truth through the aid of a "novel and useful structure." *Mayo*, 132 S.Ct. at 1293-94; *see also Diehr*, 450 U.S. at 191-92. This Court's decision in *DDR Holdings* is instructive in highlighting that the presence or absence of hardware is dispositive. In that case, the Court analyzed whether a business method of making two e-commerce web pages look alike was an abstract idea. 954 F. Supp. 2d at 527 (Gilstrap, J.). The Court concluded that the asserted claims were patent eligible because the outsourcing system "discloses a specific set of physical linkages." *Id*. For the claimed invention, the Court was able to pinpoint "functional and palpable applications in the field of computer technology." *Id.* (discussing the specific application of improving the process of displaying composite web pages) (quoting *Research Corp. Tech. v. Microsoft Corp*., 627 F.3d 859, 868 (Fed. Cir. 2010)). Indeed, the DDR claims disclosed a server responding to an activation signal, retrieving pre-stored information, and then transmitting visual elements corresponding to the source page. *Id*. These are the types of network-specific steps required to fully disclose to the public the metes and bounds of an invention. The patents asserted in this case stand in stark contrast to the DDR claims. The patents-in-suit do not disclose "functional

and palpable applications in the field of computer technology." *Id.* The patents-in-suit do not disclose web pages. The patents-in-suit do not disclose activation signals, or any particular visual elements corresponding to computer code, or servers. Here, there are *no physical linkages* disclosed.

Likewise, in *Fort Properties*, the Federal Circuit assessed another real estate tool that *did* set forth a computer. Yet the Federal Circuit *still* readily found the claims asserted in that case lacked "meaningful limits." *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1318, 1323 (Fed. Cir. 2012) (affirming the invalidation of 41 method claims because the real estate investment tool did not satisfy the requirements of § 101) (citing *CyberSource*, 654 F.3d at 1375). In *Fort Properties*, the patentee argued, and the Federal Circuit rejected, the proposition that "using a computer" broadly meant "operating an electronic device that features a central processing unit." *Fort Props*., 671 F.3d at 1323; *see also Dealertrack*, 674 F.3d at 1333 ("Simply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible."). The claims in this case fall even further from the realm of patent-eligible subject matter, as they do not mention a computer, the use of a computer or *any* physical activity. *Fort Props*., 671 F.3d at 1323 (explaining that the "dispositive issue [is] whether the claim *as a whole* recited sufficient "physical activity") (emphasis in original) (quoting *In re Schrader*, 22 F.3d 290, 294 (Fed. Cir. 1994)).

Applicable cases also offer instruction as to when a claim crosses the line from ineligible to eligible subject matter. In *Ultramercial v. Hulu*, the claimed invention required intricate and complex computer programming with a specific application to a cybermarket environment. *See Ultramercial*, 722 F.3d at 1349-50. Importantly, the Federal Circuit reproduced a figure from the asserted patent with a flow chart depicting multiple computers relied on to carry out the

particular process. *Id*. at 1350-51 (concluding that review of "subject matter as a whole" demonstrates "an extensive computer interface"). PDT cannot point to any such figure in the patents-in-suit. No figure depicts a computer or *any* technological device. Unlike in *Ultramercial*, the asserted claims in this case do not assist a computer scientist in understanding how to carry out the claimed steps. Application of precedent leads to a singular conclusion: the lack of computer implementation is fatal. *See, e.g., Accenture Global Services, GMBH v. Guidewire Software, Inc*., 728 F.3d 1336, 1338, 1344 (Fed. Cir. 2013) (invalidating claims under § 101 even where the specification included detailed descriptions of various software components and how those components interact but the claims did not recite hardware).

**b. The claims are "trivial steps" that preempt the field.**

*Mayo* specifically addressed the Supreme Court's "abiding concern" that "patents should not be allowed to preempt the fundamental tools of discovery." *Mayo*, 132 S. Ct. at 1301, *quoted in CLS Bank*, 717 F.3d at 1280. In this case, the Supreme Court's concern is realized. Here, the impermissibly broad claims of the asserted patents subsume the fundamental concept of disclosing property features over the Internet without offering any practical improvements to that concept. For example, in claim 9 of the '167 patent broadly recites the steps of *providing* web content, *listing* property features, *categorizing* the property features, and *downloading* the real estate listing from the Internet. These steps preempt the entire field of online real estate-listing. Where, as is the case here, there is a danger of overbroad exclusion, Section 101 must be interpreted to protect against far-reaching preemptive implications. *Mayo*, 132 S. Ct. at 1301 (warning against issuing claims that "were so abstract and sweeping" . . . that the claimed uses "tie up" basic technologies and "inhibit future innovation"); *Bilski*, 130 S. Ct. at 3231 (rejecting claims foreclosing risk hedging).

The preemption inquiry is further tied to the Supreme Court's recognition that clams are only valid if the inventor demonstrates "genuine human contribution" to the claimed subject matter. *Mayo*, 132 S. Ct. at 1294, *quoted in CLS Bank*, 717 F.3d at 1283. Here, the asserted patents themselves establish that the inventor made no contribution save constructing an unhelpful glossary of terms (*e.g.*, "kangaroo rat") that do not infuse any meaning into the claims. Claim limitations that are "tangential, routine, well-understood, or conventional" do not demonstrate human contribution. *CLS Bank*, 717 F.3d at 1283 (collecting cases). Regardless of which of the claims is analyzed, the result is the same. The steps—*identifying*, *researching*, *compiling*, *relating*, *listing*, *creating*, *disclosing*, *accessing*, *determining*, *reporting*, *downloading* etc.—are trivial. *Id*. If the Court inquires into the "practical, real-world effects," it will find no more than token activities cast in "highly general language." *Mayo*, 132 S. Ct. at 1302.

**c. The claims fail the machine-or-transformation test.**

In *Bilski*, the Supreme Court has confirmed that courts may look to the machine-or-transformation test as "an investigative tool" in determining whether claimed subject matter is patent eligible under 35 U.S.C. § 101. *Bilski*, 130 S. Ct. at 3227. Under that test, a process is patent eligible if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id*. at 3225-26. All claims of the patent-in-suit fail both prongs of the test. None of the claims pass the machine-or-transformation test because there is no recited machine and the claims are not transformative.

Indeed, in the case of the asserted patents, a machine plays no "significant part" in permitting the claimed method to be performed. *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333

(Fed. Cir. 2010). There is no mention anywhere in the asserted patents of a computer.[3] Because the asserted patents claim no "concrete thing, consisting of parts, or of certain devices or combination of devices," they fail the first prong of the machine-or-transformation test. *H&R Block*, No. 6:08-cv-37, at *13 (defining a "machine") (quoting *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009)). Additionally, the claims that refer to "media" or "database" are not saved, because those are not independently tangible machines such as a computer or other processing device. A "computer readable medium" limitation does not "make an otherwise unpatentable method patent-eligible under § 101." *CyberSource*, 654 F.3d 1375. A database is likewise not a physical object. *E.g., Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1340 (Fed. Cir. 2013) (referring to a database as "a collection of logically related data stored together by one or more computerized files").

The claims also fail the transformation prong. Claims are eligible under the second prong only when the use of a machine resulted in a "transformation of matter." *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-cv-180, 2014 WL 651935, at *5 (E.D. Tex. Feb. 18, 2014); *Bilski*, 130 S. Ct. at 3226-27. In this case, the object of the invention is provide "[b]uyers with better knowledge of what they are purchasing, and a full disclosure that helps shield sellers, brokers, and appraisers from future liability." '530 patent at Col. 1:30-33. There is nothing transformative about a machine in achieving this objective. Real estate disclosure is in no way dependent upon use of a machine and a property transaction can still occur regardless of whether the disclosure reporting occurs on a web page. Carrying out the claimed methods does not result in a "different state or thing," and therefore, the alleged invention does not qualify as the kind of transformation that confers patent eligibility. The machine-or-transformation test confirms the claims of the asserted

[3] Mere mention of a computer would not be enough to save these claims. A "computer" satisfies the machine prong only if it is "integral" to the claimed invention. *Bancorp*, 687 F.3d at 1277-78.

patents do not meet the requirements of 35 U.S.C. § 101, and should be deemed invalid as a matter of law.

## V. CONCLUSION

For the foregoing reasons, and pursuant to Rule 12(c), Redfin respectfully request that the Court grant this motion and enter judgment on the pleadings that the claims of the ’167 and ’530 patents are invalid under 35 U.S.C. § 101.

Respectfully submitted,

*/s/ Natalie A. Bennett*
J. Thad Heartfield (Texas Bar No. 09346800)
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
(409) 866-3318

Brent A. Hawkins
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606
(312) 372-2000

Michael S. Nadel
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

*Attorneys for Redfin Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify on April 3, 2014, the foregoing was electronically filed with the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Natalie A. Bennett*
Natalie A. Bennett