# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| PROPERTY DISCLOSURE TECHNOLOGIES LLC, | § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No. 6:14-cv-34 |
| v. | § § | Jury Trial Demanded |
| REDFIN CORPORATION, | § § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| PROPERTY DISCLOSURE TECHNOLOGIES LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Civil Action No. 6:14-cv-35 |
| RE/MAX LLC, | § § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| PROPERTY DISCLOSURE TECHNOLOGIES LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Civil Action No. 6:14-cv-36 |
| WEICHERT CO., | § § | |
| *Defendant.* | § | |

PROPERTY DISCLOSURE §
TECHNOLOGIES LLC, §
§
    *Plaintiff,* §
§
v. §     Civil Action No. 6:14-cv-37
§
ZILLOW, INC., §
§
    *Defendant.* §

---

## PLAINTIFF PROPERTY DISCLOSURE TECHNOLOGIES LLC'S RESPONSE TO DEFENDANTS REDFIN CORPORATION'S, RE/MAX LLC'S, WEICHERT CO.'S, AND ZILLOW, INC.'S MOTIONS TO DISMISS UNDER RULE 12(b)(6)

---

**BUETHER JOE & CARPENTER, LLC**

Christopher M. Joe (Lead Counsel)
Eric W. Buether
Brian A. Carpenter
Niky Bukovcan
Monica Tavakoli
Mark D. Perantie
1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:    (214) 466-1278
Facsimile:    (214) 635-1831

**ATTORNEYS FOR PLAINTIFF PROPERTY DISCLOSURE TECHNOLOGIES, LLC**

## Table of Contents

I.    INTRODUCTION ......................................................................................................... 1

II.   THE ASSERTED PATENTS ....................................................................................... 2

III.  ARGUMENT ............................................................................................................... 8

   A.   Defendants Fail To Meet The Requisite Standard For Dismissal Under 12(b)(6) ............ 8

   B.   The Section 101 Patent Eligibility Standard ................................................................. 11

      1.   The scope of patent eligibility under § 101 is broad............................................. 11

      2.   The judicially created exceptions to § 101's broad patent eligibility principles
      must be narrowly construed ..................................................................................... 12

      3.   The Defendants must establish that the claims of the asserted patents are not
      patent eligible by clear and convincing evidence ................................................... 13

      4.   The abstract ideas exception applies only to preexisting fundamental truths, such
      as mathematical formulas, that are equivalent to a law of nature ........................... 14

      5.   A computer implemented invention is a patentable machine and cannot be an
      abstract idea in the disembodied concept sense ...................................................... 18

      6.   A claim to the application of an abstract idea is patent eligible ............................ 18

   C.   The Claims of the Asserted Patents are Patent Eligible Under § 101 .............................. 20

      1.   The claims of the asserted patents are computer implemented inventions
      qualifying as eligible subject matter under § 101 ................................................... 20

      2.   The claims of the asserted patents do not claim an abstract idea .......................... 23

      3.   The Federal Circuit and District Court cases cited by the Defendants are
      distinguishable ......................................................................................................... 26

   D.   The Use of § 101 to Address Concerns Regarding Vagueness, Indefinite Disclosure,
   Invalidity, Or Lack of Enablement Is Improper and Is Easily Resolved During Claim
   Construction ..................................................................................................................... 28

   E.   PDT Has Properly Pled Indirect Infringement ............................................................... 29

IV.   CONCLUSION ........................................................................................................... 30

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l, et al.*,
    Case No. 13-298, 134 S.Ct. 734 (Dec. 6, 2013) ............................................................. 11

*Application of Chatfield*,
    545 F.2d 152  (C.C.P.A.  1976) ................................................................................... 18

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ................................................................................................. 9

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), L.L.C.*,
    687 F.3d 1266 (Fed. Cir. 2012) ................................................................................. 27

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 9

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010) ..................................................... 9, 11, 12, 13, 15, 17, 18, 19, 24

*Burr* v. *Duryee*,
    68 U.S. (1 Wall.) 531 (1863) .................................................................................... 18

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
    717 F.3d 1269 (Fed. Cir. 2013) ................................................................... 11, 15, 27

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ................................................................................. 27

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    954 F. Supp. 2d 509 (E.D. Tex. 2013) ..................................................................... 21

*Diamond* v. *Chakrabarty*,
    447  U.S.  303 (1980) ............................................................................................. 11, 12

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ............................................................................................... 16, 19

*Fonar Corp. v. General Elec. Co.*,
    107 F.3d 1543, 41 USPQ2d 1801 (Fed. Cir. 1997) ................................................. 23

*Funk  Bros. Seed v. Kalo Inoculant Co.*,
    333 U.S. 127 (1948) ................................................................................................. 19

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ............................................................................................. 30

*Gottschalk* v. *Benson*,
409 U.S. 63 (1972)........................................................................................ 15, 17, 19

*In re Alappat*,
33 F.3d 1526 (Fed. Cir. 1994)................................................................................ 22

*Kaufman Company, Inc. v. Lantech, Inc.*,
807 F.2d 970 (Fed. Cir. 1986)................................................................................. 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)................................................... 13, 15, 18, 19, 24, 26

*MySpace, Inc. v. GraphOn Corp.*,
672 F.3d 1250 (Fed. Cir. 2012)............................................................................. 14

*Parker v. Flook*,
437 U.S. 584 (1978) ............................................................................... 16, 17, 19

*Prometheus Labs, Inc. v. Mayo Collaborative Servs.*,
628 F.3d 1347 (Fed. Cir. 2010)............................................................................. 13

*R+L Carriers, Inc. v. Drivertech LLC (In re Bill of Landing Transmission & Processing Sys. Patent Litig.)*,
681 F.3d 1323 (Fed. Cir. June 7, 2012) ............................................................... 30

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
627 F.3d 859 (Fed. Cir. 2010) ................................................................... 12, 29, 30

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1335 (Fed. Cir. 2013)....................................... 8, 9, 10, 12, 13, 14, 20

*Ultramercial, LLC v. Hulu, LLC*,
657 F.3d 1323 (Fed. Cir. 2011)................................................................ 10, 12, 29

**Federal Rules and Statutes**

12(b)(6) ..................................................................................................... 1, 8, 9, 29

35 U.S.C. § 100.................................................................................................. 12, 20

35 U.S.C. § 101.................................................................................................. passim

35 U.S.C. § 102.................................................................................................. 12, 14

35 U.S.C. § 103.................................................................................................. 12, 14

35 U.S.C. § 112 ......................................................................................................... 12, 14, 29

35 U.S.C. § 282 ............................................................................................................... 1, 8

**Other Authorities**

Donald S. Chisum, *Weeds and Seeds in the Supreme Court's Business Method Patents Decision: New Directions for Regulating Patent Scope*, 15 Lewis & Clark L. Rev. 11 (2011) ....... 14

*Examination Guidelines,*
     61 Fed. Reg. 7478 (1996) ............................................................................................. 20

*Manual of Patent Examining Procedure* § 2161.01(I) (rev. Aug. 2012) .................................... 23

Marc Andreessen, *Why Software Is Eating The World,* Wall St. J. (Aug. 20, 2011) ................... 15

S. Rep. No. 1979, 82d. Cong., 2d Sess., 5 (1952) ....................................................................... 12

Plaintiff Property Disclosure Technologies LLC ("PDT") files this response in opposition to Redfin Corporation's, RE/MAX LLC's, Weichert Co.'s, and Zillow, Inc.'s (collectively, "Defendants") individual motions to dismiss based on ineligible subject matter[1] ("Motions"). Although these Defendants have filed separate motions, the substance of their motions is the same and contains multiple identically written sections.[2] As such, in order to simplify the issue presented for the Court, PDT provides a single response to these Motions, identifying any differences where relevant, and alleges as follows:

## I.    INTRODUCTION

PDT filed its complaint against the Defendants for infringement of the asserted patents on January 21, 2014. Each of the Defendants' websites provides computerized real estate searching and reporting functionality that falls squarely within the claimed method of the asserted patents. The claims of the asserted patents require, for example, "providing a web page media," "accessing a plurality of databases over the Internet," and "downloading said web page media to a browser over the Internet." Contrary to the Defendants' assertion, there are no "mental steps" recited. Such assertions are unfounded and fail to meet the standard of proof under Rule 12(b)(6) as the Defendants cannot overcome the presumption of validity under 35 U.S.C. § 282 or demonstrate how the asserted patents fall within the narrow exceptions to eligibility under 35 U.S.C. § 101.

Additionally, the Defendants' complaints regarding the asserted patents are easily overcome with proper construction of any disputed claim terms and should appropriately be

---

[1] Dkt. No. 21 in Civil Action 6:14-cv-34; Dkt. No. 16 in Civil Action 6:14-cv-35; Dkt. No. 17 in Civil Action 6:14-cv-36; Dkt. No. 15 in Civil Action 6:14-cv-37.
[2] PDT also refers the Court to a similarly filed joint motion by other defendants as Dkt. No. 28 in Civil Action 6:14-cv-13; Dkt. No. 22 in Civil Action 6:14-cv-15; Dkt. No. 20 in Civil Action 6:14-cv-17; Dkt. No. 20 in Civil Action 6:14-cv-18; and Dkt. No. 19 in Civil Action 6:14-cv-20.

addressed at a later time. As the claims of the asserted patents fall within eligible subject matter, claim construction will assist in addressing any lingering concerns, if any.[3]

As such, the Court should deny the Defendants' Motions. Alternatively, if the Court is so inclined as to grant the Motions, PDT requests that the Court reserve any such ruling until claim construction is complete.

## II.    THE ASSERTED PATENTS

The asserted patents that are subject to Defendants' Motions are U.S. Patent Nos. 7,584,167 ("'167 patent"), 7,945,530 ("'530 patent"), and 8,630,974[4] ("'974 patent") (collectively, "the asserted patents"). The '974 patent is a continuation of the '530 patent, which is a continuation of the '167 patent. The asserted patents are entitled "Real Estate Disclosure Reporting Method" and claim priority to a provisional application filed on June 23, 2000. PDT owns the asserted patents by assignment.

The '167 patent is directed towards "[a] real estate disclosure reporting method [that] compiles a plurality of items of disclosure. The items of disclosure are related according to a plurality of condition categories." '167 patent at Abstract. The '530 patent is directed towards "[a] real estate disclosure reporting method [that] identifies a condition category, creates a disclosure form and lists items of disclosure on a disclosure form. The items of disclosure relate to the condition category. The reporting method also researches a particular property to determine known items of disclosure, indicates the known items of disclosure on the disclosure form and generates a report of the known items of disclosure." '530 patent at Abstract. The '974

---

[3] PDT does not contend that the terms of the claims need construction or what those constructions should be. Nothing in this response should be deemed as any admission of the scope of the claims for the purposes of claim construction or infringement contentions. PDT reserves the right to further address construction of disputed terms during claim construction without regard to its statements in this Response.
[4] Although PDT had not asserted the '974 patent at the time of the filing of Defendants' Motions, PDT has now amended its complaint against the Defendants to include allegations of infringement of the '974 patent. Defendants' Motions only addresses patentability of the '167 and the '530 patents.

patent is "[a] real estate disclosure reporting method identifies a subject property, accesses an insurance claim database, determines from the database whether an insurance claim has been filed for the subject property and generates a report regarding the subject property and the insurance claim." '974 patent at Abstract. The disclosed invention allows, *inter alia*, "[b]uyers [to] obtain better knowledge of what they are purchasing, and a full disclosure helps shield sellers, brokers and appraisers from future liability." '167 patent at Col. 1:28-31; '530 patent at Col. 1:30-33; '974 patent at Col. 1:33-36.

The asserted patents teach that the invention may be implemented through software that is designed to operate on the internet:

> Another aspect of a real estate disclosure reporting method comprises the steps of providing a web page media and listing a plurality of known items of disclosure for a specific property on the web page media. Additional steps include categorizing the known items of disclosure on the web page media according to a plurality of real estate conditions and downloading the web page media to a browser over the Internet. '167 patent at Col. 1:58-64.

> In various embodiments, the condition category is at least one of site, environmental and natural conditions. The researching step accesses public agency databases over the Internet. The indicating step identifies an indicator area proximate each of the items of disclosure and marks the indicator area according to the known items of disclosure. The generating step downloads a report on electronic media via the Internet. '530 patent at Col. 1:58-61 (emphasis added).

> Another aspect of a real estate disclosure reporting method comprises researching a particular property to determine a plurality of known items of disclosure, compiling the known items of disclosure on electronic media, identifying at least a portion of the known items of disclosure with a condition category and downloading the electronic media to a user over the Internet. In various embodiments, the researching comprises accessing at least one database over the Internet. The at least one database comprises at least one of a Federal Superfund database and a Leaking Underground Storage Tank (LUST) database...The electronic media utilizes a markup language for downloading to a user over the Web. The known items of disclosure are designated on the electronic media with one of a checkmark or an "X" placed within a check box. '530 patent at Col. 2:3-19.

A further aspect of a real estate disclosure reporting method comprises identifying a subject property, accessing databases over the Internet, where the databases have subject property related data, determining known items of disclosure regarding the subject property from the databases, reporting the known items of disclosure on electronic media and downloading the electronic media to a user over the Internet. In various embodiments, the databases comprise at least one of government records and police records. The known items of disclosure comprise at least one of site conditions, natural conditions and environmental conditions. The electronic media report comprises a web page formatted with a markup language. The reporting comprises indicating the known items of disclosure with a designation placed within a check box. The downloading comprises communicating the web page to a user browser. '530 patent at Col. 2:20-35.

One aspect of real estate disclosure reporting comprises identifying a subject property, accessing an insurance claim database, determining from the database whether an insurance claim has been filed for the subject property and generating a report regarding the subject property and the insurance claim…Generating a report may comprise creating the report on an electronic media and downloading the electronic media to a user over the Internet. '974 patent at Col. 1:53:67.

Another aspect of real estate disclosure reporting comprises researching an insurance claim on a subject property, categorizing a cause of the insurance claim and generating a report listing the subject property, the insurance claim and the cause. In an embodiment, researching comprises accessing at least one insurance-related database. '974 patent at Col. 2:1-7.

As such, the asserted patents are directed towards a computerized method that is used as a tool in real estate disclosure reporting, not abstract ideas as Defendants allege.

The claims of the asserted patents teach various embodiments that may implement the computerized method. For example, independent claim 9 of the '167 patent claims the following:

A real estate disclosure reporting method comprising the steps of:
    providing a web page media;
    listing a plurality of known items of disclosure for a specific property on said web page media;
    categorizing said known items of disclosure on said web page media according to a plurality of real estate conditions; and
    downloading said web page media to a browser over the Internet.

'167 patent at Col. 23:50-24:5. The '167 patent's dependent claims recite further steps of, for example, "accessing an Internet-searchable database so as to determine at least some of said

known items of disclosure" (claim 10), "utilizing a real-estate-based Internet information provider so as to determine at least some of said known items of disclosure" (claim 11), or "downloading at least one of a map and an aerial photograph including said specific property" (claim 15).

> In another example, claim 9 of the '530 patent claims the following:
>
> A real estate disclosure reporting method comprising the steps of:
> researching a particular property to determine a plurality of known items of disclosure;
> compiling the known items of disclosure on electronic media;
> identifying at least a portion of the known items of disclosure with a condition category; and
> downloading the electronic media to a user over the Internet.

'530 patent at Col. 24:7-17. The dependent claims of the '530 further claim, for example, that "researching comprises accessing at least one database over the Internet" (claim 10) or "the electronic media utilizes a markup language for downloading to a user over the Web" (claim 13). Independent claim 15 of the '530 patent also claims the following embodiment:

> A real estate disclosure reporting method comprising the steps of:
> identifying a subject property;
> accessing a plurality of databases over the Internet;
> the databases having subject property related data;
> determining known items of disclosure regarding the subject property from the databases;
> reporting the known items of disclosure on electronic media; and
> downloading the electronic media to a user over the Internet.

'530 patent at Col. 24:36-46. The '530 patent's dependent claims recite further embodiments of the computerized method. For example, dependent claim 18 teaches that "electronic media report comprises a web page formatted with a markup language," and claim 20 recites "downloading comprises communicating the web page to a user browser."

The '974 patent discloses further embodiments of the computerized method. For example, dependent claims 3-7 recite that the step of "researching the property to determine a

plurality of known items of disclosure pertaining to the condition category," claimed in independent claim 1, comprises "access[ing] a database." '974 patent at Col. 23:45-60. In another embodiment, the step of "researching" comprises "accessing, via a network, one or more databases storing one or more items of disclosure of the plurality of known items of disclosure regarding the property." *Id.* at Col. 65-67 (claim 8). Another claim of the '974 patent recites "generating the report on a storage device; storing the report in a web page format on the storage device; and downloading the report in the web page format to a browser over the Internet." *Id.* at Col. 24:14-18 (claim 10). In yet another embodiment, "generating the disclosure form as a report of the known items of disclosure further comprises: providing map data identifying the property; and storing the map data on the storage device with the report for the property." *Id.* at Col. 24:54-59 (claim 20); *see also* claim 22 ("accessing one or more Internet databases to display information regarding one or more items other than the property on the map.").

Other claims of the '974 patent recite, for example, "accessing one or more Internet databases to display one or more items other than the property in the aerial photograph," (claim 25), "partitioning a web page into one or more partitions according to one or more condition categories," (claim 26), "downloading the web page to a user over the Internet," (claim 28), "storing the report in a database in response to a user instruction," (claim 29), and retrieving known items of disclosure "via a network from one or more databases storing public records," (claims 13, 16, 19, 34, 37, 40, and 43). Accordingly, the claimed inventions of the asserted patents expressly require use of a computerized program to perform the steps of the real estate disclosure reporting method.

The figures of the asserted patents provide further support for computerized implementation of the claimed methods. For example, Figure 8C teaches that in one embodiment

"researching" may be conducted by accessing databases over the Internet and downloading property-related data. *See, e.g.,* '167 patent at Col. 8:59-9:5. Figure 11C shows exemplary items of disclosure that can be researched by accessing "Internet Databases." *See, e.g.,* '167 patent at Col. 10:8-9. These figures are shown below:



FIG. 8C                    FIG. 11C

The above figures and their accompanying descriptions demonstrate that the claims of the asserted patents are directed to specific applications of a method implemented by a computer program accessing databases over the internet, not a disembodied abstract idea as Defendants erroneously contend.

In addition to the detailed description explaining teachings of the disclosed methods, the asserted patents also include two appendices. Appendix A is a glossary of exemplary priority

items of disclosure and Appendix B is a glossary of exemplary non-priority items of disclosure, both of which are taught by the computerized claims of the asserted patents. '167 patent at Col. 2:68-3:19. Contrary to the Defendants' assertion, the items in the Appendices provide guidance as to the items of disclosure that should be listed, for example, on a web page media for a specific property. *See, e.g.*, '167 patent at claim 9 ("listing a plurality of known items of disclosure for specific property on web page media"); '530 patent at claim 15 ("determining known items of disclosure regarding the subject property from the databases"); '974 patent at claims 13, 16, 19, 34, 37, 40, and 43 (retrieving known items of disclosure "via a network from one or more databases storing public records").

The specification and claims of the asserted patents thus make abundantly clear that the claimed inventions are directed to computerized methods for real estate disclosure reporting.

## III.   ARGUMENT

### A.   Defendants Fail To Meet The Requisite Standard For Dismissal Under 12(b)(6)

Title 35 explicitly states the following regarding validity of a patent:

> A patent shall be **presumed valid**. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be **presumed valid** independently of the validity of other claims; dependent or multiple dependent claims shall be **presumed valid** even though dependent upon an invalid claim…The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. § 282 (emphasis added). "It is rare," the Federal Circuit has held, "that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013) ("*Ultramercial II*"). Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that the plaintiff cannot prove a plausible set of facts that support the claim and justify relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In deciding a motion to dismiss, the court

must take the plaintiff's factual allegations as true and construe those facts in the light most favorable to it. *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). When there are well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 129 S. Ct. at 1950. The analysis calls for a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1949. Accordingly, "the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility. For those reasons, Rule 12(b)(6) dismissal for lack of eligible subject matter will be the exception, not the rule." *Ultramercial II*, 722 F.3d at 1339 (emphasis in original). *See also Kaufman Company, Inc. v. Lantech, Inc.*, 807 F.2d 970, 973 (Fed. Cir. 1986).

Here, Defendants fail to meet the requisite standard. As explained in detail below, the asserted patents do not fall under the narrow exception to the "wide scope" of eligibility requirements under 35 U.S.C. § 101. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010). The asserted patents are drawn to a computerized method for real estate disclosure reporting that allow buyers and other users to obtain information, including via the Internet, regarding a subject property and helping to "shield sellers, brokers, and appraisers from future liability." '167 patent at Col. 1:28-31; '530 patent at Col. 1:30-33; '974 patent at Col. 1:33-36. Defendants' websites have implemented the claimed computerized method for real estate disclosure as taught by the asserted patents. When these facts are drawn in the light most favorable to PDT, Defendants' Motions fail to meet the requisite standard for dismissal under Rule 12(b)(6) and cannot overcome the presumption of validity.

Alternatively, if inclined to grant the motion, the Court should not determine subject matter eligibility of the asserted patents prior to claim construction, as "the analysis under §101,

while ultimately a legal determination, is rife with underlying factual issues…claim construction normally will be required." *Ultramercial II*, 722 F.3d at 1339. Although not always necessary prior to the determination of eligibility, "[o]n many occasions, however, a definition of the invention via claim construction can clarify the basic character of the subject matter of the invention. Thus, claim meaning may clarify the actual subject matter at stake in the invention and can enlighten, or even answer, questions about subject matter abstractness." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1325 (Fed. Cir. 2011) ("*Ultramerical I*"). At the initial stage of the proceeding, the court cannot decide factual questions. *Ultramercial II*, 722 F.3d at 1339, 1349 ("In this procedural posture, the district court should either have construed the claims in accordance with *Markman*, required the defendant to establish that the only plausible construction was one that, by clear and convincing evidence rendered the subject matter ineligible (with no factual inquiries), or adopted a construction most favorable to the patentee."). "At summary judgment," the Federal Circuit has further held, "the district court may choose to construe the claims in accordance with this court's precedent, or if not it may choose to give a construction most favorable to the patentee, and to apply the usual rules pertaining to summary judgment from there, and still require clear and convincing evidence of ineligible subject matter." *Id.* at 1339-1340.

In this case, the Court has not construed the terms of the claims and cannot decide any factual questions as indeed the suits against Defendants were only recently filed. When the disputed claim terms of the asserted patents are properly construed in light of the specifications, the scope of the inventions will be clarified and it will become readily apparent that the claimed inventions easily meet the threshold requirement of 35 U.S.C. § 101.

In addition, the Supreme Court has recently granted the petition for writ of certiorari in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l, et al.*, Case No. 13-298, 134 S.Ct. 734 (Dec. 6, 2013). In the per curiam opinion, a majority of the Federal Circuit affirmed a district court's holding that the asserted method and computer-readable media claims were not directed to eligible subject matter under 35 U.S.C. § 101. An equally divided court affirmed that the asserted system claims were likewise not directed to eligible subject matter under § 101. None of the other opinions in the case garnered a majority. *See*, *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013). Accordingly, although the Supreme Court's decision may provide guidance, Defendants' current reliance on this case is misguided.

**B.     The Section 101 Patent Eligibility Standard**

**1.     The scope of patent eligibility under § 101 is broad**

Section 101 of the Patent Act describes four broad categories of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. The Supreme Court has made clear that the scope of § 101 is broad: "In choosing such expansive terms … modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope." *Diamond* v. *Chakrabarty*, 447 U.S. 303, 308 (1980). "Congress took this permissive approach to patent eligibility to ensure that 'ingenuity should receive a liberal encouragement.'" *Bilski* v. *Kappos*, 130 S. Ct. 3218, 3225 (2010) (quoting *Chakrabarty*, 447 U.S. at 308-09). This is due to the fact that "the purpose of the Patent Act is to encourage innovation, and the use of broadly inclusive categories of statutory subject matter ensures that 'ingenuity…receive[s] a liberal encouragement.'" *Ultramercial I,* 657 F.3d at 1326 (quoting *Chakrabarty*, 447 U.S. at 308). Thus, "Congress

intended statutory subject matter to include anything under the sun that is made by man."

*Chakrabarty*, 447 U.S. at 309 (quoting S. Rep. No. 1979, 82d. Cong., 2d Sess., 5 (1952)).

The limited role of § 101 is confirmed by other aspects of the Patent Act. As § 101 itself expresses, subject matter eligibility is merely a threshold check; patentability of a claim ultimately depends on "the conditions and requirements of this title," such as novelty, non-obviousness, and adequate disclosure. 35 U.S.C. § 101; *see Bilski*, 130 S. Ct. at 3225 (characterizing § 101 as a "threshold test"). Section 101 was not intended by Congress to screen out all claimed inventions that are undeserving of patent protection, but was instead designed to serve as at best a "coarse eligibility filter." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010). Congress made clear that the expansive categories—process, machine, article of manufacture, and composition of matter—are not substitutes for the substantive patentability requirements set forth in §§ 102, 103, and 112 and invoked expressly by § 101 itself. *See Ultramercial II*, 722 F.3d at 1340.[5]

### 2. The judicially created exceptions to § 101's broad patent eligibility principles must be narrowly construed

The Supreme Court has recognized that "§ 101's broad patent-eligibility principles" are subject to specific judicially created exceptions: "'[L]aws of nature, physical phenomena, and

---

[5] The Federal Circuit states the following regarding the expansive definition of the phrase "process":

> The pertinent, expansive definition of "process" in § 100(b) confirms the statute's intended breadth. At first examination, the Act's definition of "process" to include a new use of a known machine seems superfluous. After all, if "any" process may be patented under § 101, § 100(b) seems wholly unnecessary. The amendment was necessary to avoid narrow judicial interpretations of "process" given to the pre-1952 statute. Specifically, the 1952 amendments added § 100(b) to ensure that doubts about the scope of a "process" under the pre-1952 version of the patent statute would not be read into the new Act....Thus, <u>changes were made to the 1952 Act to broaden eligible subject matter and eliminate doubt caused by narrow interpretations given to the prior statute. Moreover, not only did Congress expand the definition of "process" in 1952, Title 35 does not list a single ineligible category. At a time when Congress considered § 101, it broadened the statute and certainly did not place any specific limits on it.</u>

*Ultramercial II*, 722 F.3d at 1340 (citations omitted) (emphasis added).

abstract ideas,'" even if newly discovered, are not eligible for a patent. *Bilski*, 130 S.Ct. at 3225. Given that these judicial exceptions are in derogation of § 101's expansive definition of patent-eligible subject matter, courts have recognized that these exceptions must be construed narrowly. *See, e.g., Ultramercial II,* 722 F.3d at 1341 ("In line with the broadly permissive nature of § 101's subject matter eligibility principles and the structure of the Patent Act, case law has recognized only three narrow categories of subject matter outside the eligibility bounds. . . . To sum up, one of the principles that must guide our inquiry is these exceptions should apply narrowly."). As the Supreme Court has made clear, too broad an interpretation of these exclusions from the grant in § 101 "could eviscerate patent law." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *cf. Bilski*, 130 S. Ct. at 3226 ("This Court has not indicated that the existence of these well-established exceptions gives the Judiciary carte blanche to impose other limitations that are inconsistent with the text and the statute's purpose and design."). The claims must also be considered as a whole and the "presence of mental steps [in a claim] does not detract from the patentability of [other] steps." *Prometheus Labs, Inc. v. Mayo Collaborative Servs*., 628 F.3d 1347, 1353 (Fed. Cir. 2010). The Defendants fail to acknowledge these important limitations on the application of the judicial exceptions.

3.     **The Defendants must establish that the claims of the asserted patents are not patent eligible by clear and convincing evidence**

Moreover, it is well-established that in a case involving issued patents, such as this, it is presumed that the asserted patents cover only patent-eligible subject matter. As the Federal Circuit declared in *Ultramercial*:

> As a practical matter, because judicially acknowledged exceptions could eviscerate the statute, application of this presumption and its attendant evidentiary burden is consistent with the Supreme Court's admonition to cabin exceptions to § 101. Further, applying the presumption is consistent with patent office practice. Before issuing a patent, the Patent Office rejects claims if they are drawn to ineligible subject matter, just as it rejects claims if not compliant with §§ 102,

103, or 112. With one exception, the Supreme Court's decisions since 1952 have addressed the propriety of those decisions. Thus, when a patent issues, it does so after the Patent Office assesses and endorses its eligibility under § 101, just as it assesses and endorses its patentability under the other provisions of Title 35.

722 F.3d at 1342. In this case, the Patent Office has reviewed the issued claims of the asserted patents and has found those claims eligible under § 101. Thus, the Defendants must establish that the claims of the asserted patents are not patent eligible by clear and convincing evidence. The Defendants conveniently neglect to mention these facts and the resulting high level proof they must satisfy to establish lack of patent-eligibility. They also fail to demonstrate the invalidity of each and every claim under the requisite standard and instead make improper general assertions regarding the entirety of the claimed inventions.

4.   **The abstract ideas exception applies only to preexisting fundamental truths, such as mathematical formulas, that are equivalent to a law of nature**

The Defendants assert that all of the claims of the asserted patents are unpatentable because they cover the abstract idea of assembling a real estate disclosure report. *See, e.g.*, Case No. 6:14-cv-34, Dkt. 21 at 10-11. The Federal Circuit in *Ultramerical* observed that "[m]embers of both the Supreme Court and this court have recognized the difficulty of providing a precise formula or definition for the abstract concept of abstractness." 722 F.3d at 1343.[6] This is largely

---

[6] *See also CLS Bank*, 717 F.3d at 1277 ("[D]eciding whether or not a particular claim is abstract can feel subjective and unsystematic, and the debate often trends toward the metaphysical, littered with unhelpful analogies and generalizations."); *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1259 (Fed. Cir. 2012) ("When it comes to explaining what is to be understood by 'abstract ideas' in terms that are something less than abstract, courts have been less successful."); Donald S. Chisum, *Weeds and Seeds in the Supreme Court's Business Method Patents Decision: New Directions for Regulating Patent Scope*, 15 Lewis & Clark L. Rev. 11, 14 (2011) (The "abstract idea preemption inquiry can lead to subjectively-derived, arbitrary and unpredictable results. This uncertainty does substantial harm to the effective operation of the patent system."). And that general problem is particularly pronounced in the computer- implemented invention context. Many functions that were traditionally performed in the mechanical or analog world can now be discharged digitally in the virtual world far more efficiently, which is why software is the medium of choice for both implementation and innovation. *See* Marc Andreessen, *Why Software Is Eating The World*, Wall St. J. (Aug. 20, 2011), http://on.wsj.com/1aD0OUh.

attributable to the fact that, as the Supreme Court recognized, "all inventions at some level embody, use, reflect, rest upon or apply … abstract ideas." *Mayo*, 132 S. Ct. at 1293. "Any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed." *CLS Bank*, 717 F.3d at 1298. As a result, anytime a court begins its analysis by looking for an abstract idea, it is surely going to find one. But pursuing that approach to its logical end would "eviscerate patent law." *Mayo*, 132 S. Ct. at 1293.

Notwithstanding the difficulty in defining the concept of "abstract ideas" with precision, the Supreme Court has explained that the abstract ideas exception applies only to those preexisting fundamental truths, such as mathematical formulas, that are "equivalent" to a law of nature and that "exist[ ] in principle apart from any human action." *Mayo,* 132 S. Ct. at 1297-98. The purpose of the abstract ideas exception, as with other exceptions the Supreme Court has identified, is to avoid foreclosure of the "basic tools of scientific and technological work." *Gottschalk* v. *Benson*, 409 U.S. 63, 67 (1972). Thus, the abstract ideas exception applies only to fundamental truths – *i.e.*, "mathematical formulas and the like," *Mayo*, 132 S. Ct. at 1303. The Court reaffirmed this understanding of abstract ideas in *Bilski*, 130 S. Ct. at 3225, and held ineligible a claim to a "fundamental economic practice" that had been "reduced to a mathematical formula." *Id.* at 3231. Indeed, this is the only understanding of the abstract ideas exception that is "consistent with" and does not "deviate from" the statutory text. *Id.* at 3225-26.

For example, in *Diamond v. Diehr*, 450 U.S. 175 (1981), the Supreme Court assessed a process for curing rubber using a mathematical formula (the Arrhenius equation) and a programmed computer. The claimed process was patent-eligible because, although it

"admittedly employ[ed] a well-known mathematical equation," the inventors did "not seek to pre-empt the use of that equation. Rather, they [sought] only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process," including "installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the appropriate cure time through the use of the formula and a digital computer, and automatically opening the press at the proper time." 450 U.S. at 187. Throughout the analysis, the Court explicitly equated "abstract ideas" with the notion of a mathematical "algorithm," which the Court defined as a "procedure for solving a given type of mathematical problem," *id.* at 186 – not with generic, disembodied concepts or any other kind of "abstract idea." *See id.* at 191-92 ("We recognize, of course, that when a claim recites a mathematical formula (or scientific principle or phenomenon of nature), an inquiry must be made into whether the claim is seeking patent protection for that formula in the abstract.").

Similarly, in both *Parker v. Flook*, 437 U.S. 584 (1978) and *Benson*, the Supreme Court applied the abstract ideas exception to mathematical algorithms. In *Flook*, the Supreme Court considered a claimed process for computing an updated "alarm limit" value by measuring the alarm limit, then calculating a new alarm limit using a mathematical formula, then adjusting the alarm limit based on the calculation. *Flook*, 437 U.S. at 596-97. The Court acknowledged that the claimed method was limited to a certain field (catalytic conversion of hydrocarbons) and called for "'post-solution' activity" (adjusting the alarm limit to reflect the calculations), *id.* at 590, but nonetheless held it ineligible because to grant a patent would foreclose "one of the 'basic tools of scientific and technological work.'" *Id.* at 591-92.

In *Benson*, the Supreme Court held ineligible a method for using a computer to implement a mathematical algorithm to convert binary-coded decimal numerals into pure binary numerals because "the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." *Benson*, 409 U.S. at 71-72. In both cases, the Court treated the "abstract ideas" exception as directed to such fundamental truths. *See Flook*, 437 U.S. at 589 (explaining that *Benson* "[r]eason[ed] that an algorithm, or mathematical formula, is like a law of nature … [and] a law of nature cannot be the subject of a patent."); *id.* at 595 n.18 ("[O]ur holding today is that a claim for an improved method of calculation . . . is unpatentable subject matter under § 101."); *Benson*, 409 U.S. at 71-72 (declaring ineligible a claim that "would wholly pre-empt the mathematical formula").

Most recently, in *Bilski*, the Supreme Court again held ineligible as an "abstract idea" a patent claim directed to a fundamental truth. The key claims at issue in *Bilski* described "a series of steps instructing how to hedge risk" (claim 1) and that series of steps "articulated … into a simple mathematical formula" (claim 4). The character of the claims, which involved no computer implementation or other use of physical instrumentalities, led the Court to conclude that "[t]he concept of hedging, described in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea, *just like the algorithms at issue in* Benson *and* Flook." 130 S. Ct. at 3231 (emphasis added). The Court explained that its rationale for declaring the claims ineligible was to permit continued public access to the "'fundamental economic practice'" the applicants had claimed: "Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Id.*; *see also id.* at 3227 (plurality) (describing "the larger object" of

the patent law to be "securing patents for valuable inventions without transgressing the public domain").

Thus, in each of these cases the Court applied the "abstract ideas" exception solely to fundamental or mathematical truths, which, whether known or unknown, "exist[ ] in principle apart from any human action." *Mayo*, 132 S. Ct. at 1297.

### 5. A computer implemented invention is a patentable machine and cannot be an abstract idea in the disembodied concept sense

A computer-implemented invention that is either a system (in § 101 terms, a "machine") or method (in § 101 terms, a "process") cannot be an abstract idea in the disembodied concept sense. That is because a computer is, without question, a machine and its specified method of use implicates a specialized computer. *See Application of Chatfield*, 545 F.2d 152, 157 (C.C.P.A. 1976) ("we find no basis for treating methods of operating computing machine systems differently from methods of operating any other form of machine system"); *Burr* v. *Duryee*, 68 U.S. (1 Wall.) 531, 570 (1863) ("A machine is not a principle or an idea."). In fact, the Supreme Court has stated that use of a machine in a process is "an important and useful clue" to patent eligibility. *Bilski,* 130 S. Ct. at 3226. Thus, a computer-implemented invention cannot be a claim to merely a mental process.

### 6. A claim to the application of an abstract idea is patent eligible

Importantly, the Supreme Court also has repeatedly held that a claim can embrace an abstract idea and be patentable. *See Mayo*, 132 S. Ct. at 1294 (explaining that the fact that a claim uses a basic tool does not mean it is not eligible for patenting). Instead, a claim is not patent eligible only if, instead of claiming an application of an abstract idea, the claim is instead to the abstract idea itself. *See also Bilski*, 130 S. Ct. at 3230 ("[W]hile an abstract idea, law of nature, or mathematical formula could not be patented, an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent

protection." (emphasis in original) (internal quotation marks omitted)); *Diehr*, 450 U.S. at 187 ("It is now commonplace that an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.")

Thus, a claim is not patent eligible if it merely describes an abstract idea or simply adds "apply it." *See Mayo*, 132 S. Ct. at 1294, 1297. Similarly, claims that recite only insignificant pre- or post-solution activity, such as steps necessary to any practical use of the formula – *i.e.*, inputting numbers into a mathematical formula, *Bilski*, 130 S. Ct. at 3231, or reporting the results of a mathematical calculation, *Flook*, 437 U.S. at 590 – cannot "transform" an ineligible abstract idea "into a patent-eligible application" of the idea. *Mayo*, 132 S. Ct. at 1298. To allow such a claim would effectively preempt use of the mathematical formula itself, thus removing a "basic tool[ ]," *Benson*, 409 U.S. at 67, from the "storehouse of knowledge," *Funk Bros. Seed v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).

On the other hand, a claim will be limited meaningfully when, in addition to the abstract idea, the claim recites added limitations that are essential to the invention. In those instances, the added limitations do more than recite pre- or post-solution activity, they are central to the solution itself. In such circumstances, the abstract idea is not wholly pre-empted; it is only preempted when practiced in conjunction with the other necessary elements of the claimed invention. *See Diehr*, 450 U.S. at 187 ("[T]he respondents here do not seek to patent a mathematical formula. Instead, they seek patent protection for a process of curing synthetic rubber. Their process admittedly employs a well-known mathematical equation, but they do not seek to pre-empt the use of that equation. Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process.").

These precedents demonstrate that the patent eligibility of computer-implemented inventions is determined using the same principles as other inventions. Simply put, if the claim would preempt the use of a fundamental truth, such as a mathematical formula or the like, the claim is ineligible. *See Examination Guidelines*, 61 Fed. Reg. 7478, 7484 (1996) ("A claimed process that consists solely of mathematical operations is non-statutory whether or not it is performed on a computer."). That is, if the claim recites a fundamental truth or mathematical formula and an instruction to "apply it on a computer" (or an equivalent instruction), or to take other steps inherent to use of the formula, it fails to meet the requirement of § 101. If the claim does not, on its face, recite a mathematical formula or other fundamental truth, it is eligible. Also, if the claim recites a particular application of a mathematical formula or fundamental truth, such that others would not be foreclosed from using the formula in other practical applications, it is eligible.

### C.   The Claims of the Asserted Patents are Patent Eligible Under § 101

### 1.   The claims of the asserted patents are computer implemented inventions qualifying as eligible subject matter under § 101

The claims of the asserted patents are limited to a computerized system or method as evidenced by the express claim language. 35 U.S.C. § 100(b) expressly provides that the statutory definition of a "process" "includes a new use of a known . . . machine" – such as new use of a known general-purpose computer through software that brings about new configurations of electronic circuits to perform new functions. The computerized methods claimed in the asserted patents, therefore, fall within the term "process" used in § 101. *See also Ultramercial*, 722 F.3d at 1349 ("As a method, it easily satisfies § 100's definition of 'process' and thus falls within a § 101 category of patent-eligible subject matter."). The fact that the claims of the asserted patents expressly require computerization (reciting, for example, "a network," "database," "Internet databases," "downloading," "the Internet," "web page," etc.) refutes the

Defendants' assertion that the claims are not patent eligible because they "can be and are mental processes performed by human beings." *See*, *e.g.*, Case No. 6:14-cv-34, Dkt. 21 at 10. Like the claims in *DDR Holdings* that disclosed a specific set of physical linkages between computer elements and the web pages at issue, the claims here require interaction between computer components and the software used to implement the claimed method, representing "an improvement to computer technologies in the marketplace." *See DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509, 527 (E.D. Tex. 2013).

For example, independent method claim 9 of the '167 patent requires "providing a web page media; listing a plurality of known items of disclosure for a specific property on said web page media; categorizing said known items of disclosure on said web page media according to a plurality of real estate conditions; and downloading said web page media to a browser over the Internet." In another example, independent claim 15 of the '530 patent also discloses "identifying a subject property; accessing a plurality of databases over the Internet; the databases having subject property related data; determining known items of disclosure regarding the subject property from the databases; reporting the known items of disclosure on electronic media; and downloading the electronic media to a user over the Internet." Claim 15's dependent claims are directed to further computerized limitations. For example, dependent claim 18 of the '530 patent teaches that "the electronic media report comprises a web page formatted with a markup language," and claim 20 recites that "downloading comprises communicating the web page to a user browser."

The claims of the '974 patent are likewise directed to computerized embodiments. For example, the step of "researching," recited in independent claim 1, comprises "accessing, via a network, one or more databases storing one or more items of disclosure of the plurality of known

items of disclosure regarding the property." '974 patent at Col. 23:65-67 (claim 8). Similarly, claim 10 recites "generating the report on a storage device; storing the report in a web page format on the storage device; and downloading the report in the web page format to a browser over the Internet." *Id.* at Col. 24:14-18 (claim 10). Other claims in the '974 patent recite, for example, "accessing one or more Internet databases to display one or more items other than the property in the aerial photograph," (claim 25), "partitioning a web page into one or more partitions according to one or more condition categories," (claim 26), "downloading the web page to a user over the Internet," (claim 28), "storing the report in a database in response to a user instruction," (claim 29), and retrieving known items of disclosure "via a network from one or more databases storing public records," (claims 13, 16, 19, 34, 37, 40, and 43). These computerized aspects of the claims of the asserted patents are central to the claimed inventions and are not mere "data gathering elements" that are simply "downloaded over the internet." *See, e.g.,* 6:14-cv-35, Dkt. 16 at 14. The claims of the asserted patents expressly require computerized functionality and cannot be performed by human thought alone or by use of pen and paper.

Although the Defendants assert that the claims of the asserted patents are ineligible because they only call for a general purpose computer, *see, e.g.*, 6:14-cv-35, Dkt. 16 at 14-15, the Federal Circuit has expressly refuted such contentions in *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (*en banc*). In that case, the Federal Circuit recognized that a general purpose computer programmed to perform a specific function is a new machine with individualized circuitry created and used by the operation of the software. 33 F.3d at 1545. The combination of machine and software "creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *Id.*

Additionally, the Defendants assert that "the 'electronic media' or 'web page media' do not meaningfully limit the claims by either specifying any particular type of media or by specifying how they should be programmed." 6:14-cv-35, Dkt. 35 at 9, 17. *See also* The Defendant, however, ignores the teaching of the invention. For example, the asserted patents teach that "[t]he electronic media utilizes a markup language for downloading to a user over the Web." '530 patent at Col. 2:3-19. *See also* '530 patent at Col. 2:20-35 ("The electronic media report comprises a web page formatted with a markup language…The downloading comprises communicating the web page to a user browser."); Claim 13 of the '530 patent ("the electronic media utilizes a markup language for downloading to a user over the Web"). One skilled in the art would know how to develop and write program code using a markup language (such as HTML) as required by the claims. As the PTO has explained, "[c]omputer-implemented inventions are often disclosed and claimed in terms of their functionality. This is because writing computer programming code for software to perform specific functions is normally within the skill of the art once those functions have been adequately disclosed." *Manual of Patent Examining Procedure* § 2161.01(I), at 2100-178 (rev. Aug. 2012) (citing *Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1549, 41 USPQ2d 1801, 1805 (Fed. Cir. 1997)).

Thus, the computer implemented inventions of the asserted patents are formally drawn to patentable subject matter pursuant to § 101.

### 2.     The claims of the asserted patents do not claim an abstract idea

Although the Defendants contend that the asserted patents "cover the abstract idea of assembling a real estate disclosure report," (*see, e.g.*, 6:14-cv-34, Dkt. 21 at 8-9; 6:14-cv-35, Dkt. 16 at 1), the express language of the claims of the asserted patents refute this contention. Specifically, the asserted patents do not claim any fundamental truth. Nowhere do the claims recite a mathematical formula, or a fundamental practice that can be "reduced to a

mathematical formula," *Bilski*, 130 S. Ct. at 3231, or any other form of fundamental truth that "exists in principle apart from any human action," *Mayo*, 132 S. Ct. at 1297.

To the contrary, the claims of the asserted patents recite a specific series of steps requiring computer software and hardware functionality. *See, e.g.,* claim 9 of the '167 patent at Col. 23:50-24:5 ("providing a web page media; listing a plurality of known items of disclosure for a specific property on said web page media; categorizing said known items of disclosure on said web page media according to a plurality of real estate conditions; and downloading said web page media to a browser over the Internet."); claim 15 of the '530 patent at Col. 24:36-46 ("identifying a subject property; accessing a plurality of databases over the Internet; the databases having subject property related data; determining known items of disclosure regarding the subject property from the databases; reporting the known items of disclosure on electronic media; and downloading the electronic media to a user over the Internet."). The numerous dependent claims of the asserted patents recite additional computer related functionality. *See, e.g.,* "accessing an Internet-searchable database so as to determine at least some of said known items of disclosure," (claim 10 of the '167 patent); "utilizing a real-estate-based Internet information provider so as to determine at least some of said known items of disclosure," (claim 11 of the '167 patent); "downloading at least one of a map and an aerial photograph including said specific property," (claim 15 of the '167 patent); "electronic media report comprises a web page formatted with a markup language," (claim 18 of the '530 patent); "downloading comprises communicating the web page to a user browser," (claim 20 of the '530 patent); "accessing one or more Internet databases to display one or more items other than the property in the aerial photograph," (claim 25 of the '974 patent); "partitioning a web page into one or more partitions according to one or more condition categories," (claim 26 of the '974 patent); "downloading the

web page to a user over the Internet," (claim 28 of the '974 patent); "storing the report in a database in response to a user instruction," (claim 29 of the '974 patent); retrieving known items of disclosure "via a network from one or more databases storing public records," (claims 13, 16, 19, 34, 37, 40, and 43 of the '974 patent).

As such, the claims require a substantial and meaningful role for the computer – beyond merely performing computations more quickly or accurately than a person could do with pencil and paper. These and other computer related limitations of the claims are central to the ability of allowing "buyers [to] obtain better knowledge of what they are purchasing" and providing "a full disclosure [that] helps shield sellers, brokers and appraisers from future liability." '167 patent at Col. 1:28-31; the '530 patent at Col. 1:30-33; the '974 patent at Col. 1:33-36.

Defendants conveniently ignore these limitations. However, the foregoing examples of specific claim limitations – including in particular the limitations calling for a particular form of computer implementation – preclude any conclusion that the inventions as claimed are directed to a disembodied abstract idea. The claims do not cover the general concept of gathering information that is merely made available for download via the Internet. Rather, the claims of the asserted patents are directed to various embodiments for a computerized real estate disclosure reporting tool by using a computer in a particularized manner that, for example, "access[es], via a network, one or more databases storing one or more items of disclosure … regarding the property"; "retrieving, via the network, the plurality of known items of disclosure [and] inputting the plurality of known items of disclosure to the disclosure form; and storing the disclosure form on the storage device;" "storing the report in a web page format on the storage device"; "downloading the web page format to a browser over the Internet"; "accessing one or

more Internet databases"; "providing aerial photograph data identifying the property; and storing the aerial photograph data on the storage device with the report for the property." '974 patent at Col. 24:10 – Col. 25:14. Accordingly, the claims of the asserted patents stand in stark contrast to the claims at issue in *Benson*, *Flook*, *Bilski*, and *Mayo*. In each of those cases, the Court made clear that the claims recited nothing more than an abstract idea or law of nature and – at most – entirely insignificant post-solution activity.

The claims of the asserted patents, by their terms, are directed to eligible subject matter under § 101. Under a proper analysis, a claim that on its face recites a statutory category of invention, and does not on its face recite a law of nature or a fundamental truth like a mathematical formula, passes muster under § 101, and its ultimate patentability is determined by the other statutory criteria. That is true of the claims of the asserted patents. The claims do not, as written, recite any fundamental truth nor do they purport to claim all practical applications of real estate disclosure. Because the claims do not even *recite* a fundamental truth, they cannot, *a fortiori*, "tie up" all practical uses of any fundamental truth. *Mayo*, 132 S. Ct. at 1301. Moreover, even if they were somehow found to incorporate a fundamental truth, the claims – read as a whole – do not preempt the use of any fundamental truth as such, but instead apply it in a narrow and specific way.

### 3. The Federal Circuit and District Court cases cited by the Defendants are distinguishable

The Defendants cite a number of Federal Circuit and District Court decisions which are clearly distinguishable from the facts in this case. For example, the Defendants cite the recent *Alice Corp*. *en banc* decision of the Federal Circuit. Although it was hoped that this *en banc* decision would clarify the legal standard applicable to § 101 challenges to patent claims, the Federal Circuit decision in this case comprises a plethora of opinions, none of which garnered a

majority. Thus, as Judge Radar commented in his opinion in that case, "though much is published today discussing the proper approach to the patent eligibility inquiry, nothing said today beyond our judgment has the weight of precedent." 717 F.3d 1269, 1292 n.1. The *Alice Corp.* decision dealt only with method claims which were found to claim the abstract idea of reducing settlement risk by effecting trades through a third-party intermediary. The court also found that none of the computer related limitations added anything of substance to the claim constituting nothing more than "insignificant post-solution activity" relative to the abstract idea.

The Defendants also cites *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), L.L.C.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). In *Bancorp*, the court found a system claim comprising digital storage, a policy generator, a debtor, and various calculators patent-ineligible because the limitations of that claim were directed to no more than the abstract idea of managing a stable value protected life insurance policy. *Bancorp*, 687 F.3d at 1272, 1280-81.

The Defendants' reliance on *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) is misguided. In *CyberSource*, the court emphasized that **every single step** of the method claim at issue could be performed in the human mind. *Id.* at 1373. The court held that such a method is "unpatentable **not** because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed *entirely* in the human mind are… 'basic tools of scientific and technological work' that are free to all." *Id.* The second claim the court analyzed was a "Beauregard claim" directed to a computer readable medium "containing program instructions for a computer to perform a particular process" that recited the steps of "obtaining credit card information," "verifying the credit card information," "constructing a map," and "utilizing the map…to determine if the credit card transaction is valid." *Id.* at 1373-74. Despite its recitation of

"a computer readable medium," the court treated this claim as a method claim and found it to be equally unpatentable for the same reasons. *Id.* at 1374-75.

Unlike the claims in *CyberSource*, where all of the recited method steps could be performed entirely in the human mind, the claims of the asserted patents cannot be performed without a computerized program. For example, claim 9 of the '167 patent requires "providing a web page media; listing a plurality of known items of disclosure for a specific property on said web page media; categorizing said known items of disclosure on said web page media according to a plurality of real estate conditions; and downloading said web page media to a browser over the Internet." The '167 patent at Col. 23:50-24:5. Other claims of the '974 patent require, for example, "partitioning a web page into one or more partitions according to one or more condition categories," (claim 26), "storing the report in a database in response to a user instruction," (claim 29), and retrieving known items of disclosure "via a network from one or more databases storing public records," (claims 13, 16, 19, 34, 37, 40, and 43). It is simply impossible for these methods to be "performed in the human mind."

The Defendants cite a number of other Federal Circuit and District Court decisions, but, as with the cases discussed above, these decisions involve distinguishable claims and inapposite reasoning. The patent eligibility of the claims of the asserted patents must be decided based upon the language of the claims as a whole and controlling Supreme Court authority on this issue.

### D.    The Use of § 101 to Address Concerns Regarding Vagueness, Indefinite Disclosure, Invalidity, Or Lack of Enablement Is Improper and Is Easily Resolved During Claim Construction

Defendants' contentions essentially boil down to disputed claim language. For example, Defendants takes issue with "downloading," "compiling," "electronic media," and "items of disclosure." *See, e.g.*, 6:14-cv-37, Dkt. 15 at 2; 6:14-cv-35, Dkt. 16 at 6. Although PDT does not agree that such terms present any claim construction issues or require construction at all, such

contentions are not properly addressed in a 12(b)(6) motion to dismiss but are more appropriately addressed during claim construction. The "coarse eligibility filter" of § 101 should not be used to invalidate patents based on concerns about vagueness, indefinite disclosure, invalidity, or lack of enablement. *Ultramercial I*, 657 F.3d at 1329; *see also Research Corp.*, 627 F.3d at 869 ("In section 112, the Patent Act provides powerful tools to weed out claims that may present a vague or indefinite disclosure of the invention.").

### E. PDT Has Properly Pled Indirect Infringement

Defendants RE/MAX LLC and Weichert, Co. additionally assert that PDT's complaints should be dismissed because it does not "properly allege that [Defendant] had knowledge of the issued patents or specific intent to encourage the third party's infringement." Case No. 6:14-cv-36, Dkt. 17 at 18; Case No. 6:14-cv-35, Dkt. 16 at 20. Defendants make this assertion without discussion or supporting evidence demonstrating specifically that the alleged failure is dispositive.

Although PDT believes that its original complaint sufficiently pled causes of action for indirect infringement, PDT has amended its complaint to more directly state its assertions. Specifically, PDT initially alleged that each Defendant induces visitors to its website(s) to directly infringe the '974 Patent through its use of the infringing functionality. *See* Dkt. 1. It also alleged that each of the Defendants has been aware of the asserted patents since at least the date it was provided notice of the original complaint and may have been aware of the asserted patents prior to this date given that the inventor, Dr. Bell, is a well-known economist and property damages consultant in the real estate industry. *Id.* PDT has amended its complaint to include the additional assertion that by knowingly making the computerized real estate searching and reporting functionality available on its website to end users with knowledge of the asserted patents, each Defendant has specific intent to encourage its end users to infringe. *See* Amended

Complaint. The controlling authority on this issue makes clear that a party is liable for indirect infringement if it knew or should have known that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). This does not mean, however, that PDT "must prove itself at the pleading stage." *R+L Carriers, Inc. v. Drivertech LLC (In re Bill of Landing Transmission & Processing Sys. Patent Litig.*), 681 F.3d 1323, 1339 (Fed. Cir. June 7, 2012). Accordingly, PDT's currently pled allegations are sufficient, and the Defendants' Motions on these grounds should be dismissed.

## IV.   CONCLUSION

The Defendants have not established, by clear and convincing evidence, that the claims of the asserted patents fail to recite patent eligible subject matter as a matter of law. As set forth above, it is undisputed that the claims of the asserted patents are directed to a computerized method and recite a specific series of steps requiring computer software, hardware and functionality and, therefore fall within the "process" category of patent eligible inventions. The claims do not recite a law of nature or a fundamental truth like a mathematical formula and are not "so manifestly abstract as to override the statutory language of section 101." *See Research Corp.*, 627 F.3d. at 869. Thus, the claims of the asserted patents are patent eligible and the Court should deny Defendants' Motions to dismiss.

If the Court is so inclined as to grant the Defendants' Motions, PDT requests that the Court reserve any such ruling until claim construction is completed.

Dated: April 21, 2014

Respectfully submitted,

**BUETHER JOE & CARPENTER, LLC**

By:    */s/ Niky Bukovcan*
        Christopher M. Joe (Lead Counsel)
        State Bar No. 00787770
        Chris.Joe@BJCIPLaw.com
        Eric W. Buether
        State Bar No. 03316880
        Eric.Buether@BJCIPLaw.com
        Brian A. Carpenter
        State Bar No. 03840600
        Brian.Carpenter@BJCIPLaw.com
        Niky Bukovcan
        State Bar No. 24078287
        Niky.Bukovcan@BJCIPLaw.com
        Monica Tavakoli
        State Bar No. 24065822
        Monica.Tavakoli@BJCIPLaw.com
        Mark D. Perantie
        State Bar No. 24053647
        Mark.Perantie@BJCIPLaw.com

        1700 Pacific Avenue
        Suite 4750
        Dallas, Texas 75201
        Telephone:   (214) 466-1278
        Facsimile:    (214) 635-1831

        **ATTORNEYS FOR PLAINTIFF PROPERTY DISCLOSURE TECHNOLOGIES, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 21st day of April, 2014. Any other counsel of record will be served by facsimile transmission.

        */ s/ Niky Bukovcan*
        Niky Bukovcan